# CROSKEY *v.* ATTERBURY.

PATENTS ; INTERFERENCES; WITNESSES; PRIORITY; REDUCTION TO
PRACTICE, ACTUAL AND CONSTRUCTIVE; ALLOWABLE APPLICA-
TION; AMENDMENT; REASONABLE DILIGENCE.

1. That an applicant for a patent in his testimony in an interfer-
ence proceeding fixes his conception of the invention at an ear-
lier date than in his preliminary statement, no advantage
accruing to him therefrom; that he declined to submit for
general examination by opposing counsel his sketch-book
from which drawings offered in evidence by him him were cut,
and that he declined to answer certain questions relating to
matters not involved in the issues of interference and wholly
irrelevant thereto, do not constitute grounds for disregarding
his testimony.
2. The testimony of a witness in an interference proceeding is not to
be disregarded because of his refusal to answer a question as
to whether he did not himself invent the process the subject
of interference, independently of the party in whose behalf he
testifies.
3. Actual reduction to practice, where the invention is a process,
consists in the actual performance of the process.  Making a
device by means of which the process can be carried out is not
such a performance, and is therefore not a reduction to prac-
tice.
4. In a contest upon the question of priority of invention, if the first
to conceive is guilty of laches in completing and reducing his
conception to practice, and in the meantime and while he is
not exercising due diligence, another conceives the same in-
vention, then he who first reduces the invention to practice
is, in law, the first inventor.
5. The filing of a completed allowable application for a patent is a
constructive reduction to practice, and is as effectual in a con-
test of priority as actual reduction to practice ; *following* Por-
ter v. Louden, 7 App. D. C. 64; Yates v. Huson, 8 App. D. C. 93.
6. An amendment of a completed application for a patent which
involves no departure from the original invention but simply
makes the claims conform to the specifications filed with the
original application, will not prevent the original application
from operating as a constructive reduction to practice.
7. Failure of a party to make a motion, under Rule 122 of the Patent

Office, to dissolve an interference on the ground that an accepted amendment to one of the applications involves new matter, is an acquiescence in the allowance of the amendment.

8. A delay of eighteen months after the conception of an invention in reducing it to practice, is not reasonable diligence in the case of an invention requiring but one month for its reduction to practice, in the absence of controlling adverse conditions.

9. Time spent in efforts to make other inventions will not excuse delay otherwise unreasonable.

No. 47. Patent Appeals. Submitted May 11, 1896. Decided June 11, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding involving the question of priority of invention for an improvement in the process of manufacturing hollow glassware. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Connolly Bros.* for the appellant.

*Mr. J. Snowden Bell* and *Mr. George H. Christy* for the appellee.

Mr. Justice COLE, of the Supreme Court of the District of Columbia, who sat with the court in the hearing of this cause in the place of Mr. Chief Justice ALVEY, delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding in his office awarding priority of invention to the appellee, Thomas B. Atterbury, for an improvement in the process of manufacturing hollow glassware. The Examiner of Interferences, the Board of Examiners-in-Chief, and the Commissioner of Patents, the three tribunals of the Patent Office authorized by the rules thereof to determine questions arising upon interferences, upon successive appeals pronounced in favor of the appellee as to both of the issues involved in the interference. Those issues are as follows:

" 1. The process of forming hollow articles of glassware consisting in pressing into a mold from a mass of glass in a font and over and around a plug sustained in the mold,

sufficient glass to fill the mold and finishing a definite portion of the article by such pressure, separating the partially finished blank from the mass of glass in the font and finally blowing the unfinished portion to the desired shape.

"2. The process of forming several articles of glassware simultaneously which consists in forcing a mass of molten glass from a font around a series of two or more cores each arranged in a suitable mold-cavity, separating the blanks thus formed from the glass in the font and then simultaneously blowing the bodies of the several blanks to the desired shape."

The appellee filed his application involved in this interference in the Patent Office on the 1st day of October, 1892, and the appellant, John H. Croskey, filed his on the 28th day of December, 1893. In his preliminary statement the appellant claims conception of the invention and the making of drawings in the month of August, 1889, and the making of other drawings from time to time from that date until January, 1893, and disclosure to others about July, 1890, and actual reduction of the invention to practice in or about the month of October, 1892. The Commissioner finds the earliest date of drawings and disclosure to others by appellant to be December 15, 1890. In the view we take, it becomes immaterial to determine whether appellant is entitled to an earlier date for drawings and disclosure than that accorded to him by the Commissioner. The Commissioner also finds that appellant completed a mold for the purpose of practicing the invention on the 1st day of October, 1892, and that he actually practiced the invention of the first issue by making articles of glassware in accordance therewith on the 3d day of October, 1892; and the correctness of these findings is acquiesced in by both parties to this appeal.

The appellee in his preliminary statement claims conception of the said invention about the middle of June, 1892, drawings and disclosure to others about July 6, 1892, and actual reduction to practice about the 1st of October, 1892.

9 Ct. App.—15

It was conceded at the argument, however, that appellee's first actual reduction to practice did not occur until about the 22d day of October, 1892. The other dates claimed by appellee were adopted as correct by the Commissioner, and the accuracy thereof is not seriously questioned by appellant if appellee is to be considered an original inventor at all; but appellant's counsel contended that the evidence in behalf of appellee is insufficient to prove that he at any time conceived the said invention, and they assail the credibility of the witnesses by whom that fact is sought to be established. It is conceded by appellee that the appellant was the first to conceive the invention, and the main controversy relates to the questions of who was the first to reduce the same to practice and whether the appellant is guilty of laches. There are thirteen reasons of appeal in the record, assigning various grounds of error in the rulings of the Commissioner, several of the reasons assigning the same alleged errors in different language, so that the questions raised by them and argued at the hearing may be properly stated as follows:

First. Is the evidence in behalf of the appellee as to the alleged conception of the invention by him credible, and does it sufficiently establish the fact that he is an original inventor of the process mentioned in the interference?

Second. Was appellant's completed mold finished on the 1st day of October, 1892, actual reduction of the process to practice?

Third. Was appellee's application filed the first day of October, 1892, constructive reduction to practice; and, if so, is that to have the same force and effect in this contest of priority of invention as actual reduction to practice?

Fourth. Was appellant in the exercise of due diligence in completing and adapting his invention at the time of the conception thereof by appellee; and, if so, did such diligence continue until he made his application?

Fifth. Is the second issue a patentable invention, considered apart from the first?

First. Is appellee an original inventor of the said process? This question of fact depends upon the testimony of the appellee and the witness Schmunk, who testified in his behalf. It is argued that the testimony of appellee is not credible and should be disregarded. The only specific reasons assigned for this contention are that in his testimony he states his conception at a somewhat earlier date than he did in his preliminary statement; that he declined to submit for general examination by appellant's counsel the sketch-book from which he stated the drawings offered in evidence were cut, and that he declined to answer some of the questions put to him. The examination of his testimony shows that he did submit the sketch-book to the examination of counsel for his opponent, for the purpose of enabling them to examine the leaves thereof immediately preceding and following those which were cut out to file as exhibits in this cause, and only objected to the examination by them of the other drawings contained in said book relating to other inventions. Appellant's counsel had the opportunity of ascertaining from the examination of said book its appearance and whether the pages cut out and filed in this proceeding were in their consecutive order, and, indeed, so far as can be perceived, had all the advantage that could have been obtained from said book and the appearance thereof had they been permitted to examine the other drawings in it. There is no proof or suggestion that there was anything suspicious about the appearance of the book, or that the leaves taken out and filed did not appear in their proper order therein. The only questions which the appellee declined to answer related to matters not involved in the issues of interference and were wholly irrelevant thereto. The fact that he stated the date of his conception earlier in his testimony than in his preliminary statement ought not in the light of the other evidence in the case, to discredit him. The earliest date stated by him is much later than that claimed by appellant and could not have been stated for the

purpose of antedating him. No advantage could accrue to appellee from having the date of his conception mentioned in his testimony adopted by the Patent Office rather than the one stated in his preliminary statement. Under the rules of practice of the Patent Office he could not have contended for an earlier date than that mentioned in his preliminary statement without amending the latter, and no application to amend was made. No motive therefore appears for the making of a false statement in this particular. It is also argued that Schmunk's testimony should be disregarded because he declined to answer whether he did not invent the process independent of appellee; but that was an immaterial question. He had already testified that appellee disclosed the invention to him and that he made the drawing in accordance with his directions, and that he believed that appellee was an original inventor thereof. Whether the witness was also an original inventor of the process was a question which could in no manner affect the interest of either party to this proceeding. The reasons alleged against the credibility of these two witnesses would not justify the rejection of the testimony of either of them as unworthy of belief, and it must be held that the evidence is sufficient to establish the fact that appellee was an original inventor of the said process.

Second. Was appellant's completed mold actual reduction to practice? Actual reduction of an invention to practice, as the words themselves indicate, is the actual application of the invention to the accomplishment of the purpose for which it is intended. If the subject of the invention be machinery or an improvement therein, then the construction of a machine according to the invention is actual reduction to practice; but the making of a model by which the machine may be constructed is not. *Porter* v. *Louden*, 7 App. D. C. 64. It follows that where the invention is a process, as in this case, the process must be performed in order to make actual reduction to practice. The Commis-

sioner in his opinion in this case states the principle accurately in the following language:

"It is strenuously urged by Croskey that inasmuch as his mold was finished by October 1, 1892, he should have that date for his reduction to practice. He reaches that date by reasoning that as the mold was actually tried on October 3, 1892, which was Monday, this mold must have been finished on Saturday or probably before, because Saturday was a half-holiday. The invention in this case, however, is not a mold, but a process or series of acts, and I think that as a general rule it may be said that to reduce a method or process to practice the series of acts must be actually performed.

"It is true that in many cases the inventor is obliged to produce a new machine or apparatus to successfully work his process. It is possible that a case might arise in which the new method would be so clearly shown by an inspection of the new machine or apparatus that it would seem like straining a point to insist that the machine or apparatus must actually be used to effect a reduction to practice of the process. That is not the usual case, and clearly it is not the case now in question. This interference covers a process which is not apparent from an inspection of the mold and which is not in fact carried out by the mold acting automatically, but which requires other apparatus in connection with this mold for its successful operation."

Actual reduction to practice is also similarly defined in the case of *Lorraine* v. *Thurmond*, 51 O. G. 1781. It is also worthy of comment that counsel for appellant in their third reason for appeal from the Examiner of Interferences to the Board of Examiners-in-Chief and in their fourth reason of appeal from the latter to the Commissioner, expressly claim that the earliest actual reduction of the process to practice was by appellant on the 3d day of October, 1892, when he actually made articles of glassware in accordance with it. It must therefore be held that appellant's earliest actual reduction to practice was at the last named date.

Third. Was appellee's application filed on the 1st day of October, 1892, constructive reduction to practice of the invention in interference, and, if so, has that the same effect in this contest as actual reduction to practice?

In a contest upon the question of priority of invention, if the first to conceive is guilty of laches in completing and reducing his conception to practice, and in the meantime, and while he is not in the exercise of due diligence, another conceive the same invention, then he who first reduces the invention to practice is, in law, the first inventor, and the filing of a completed allowable application for a patent for the invention is a constructive reduction to practice and is as effectual in a contest of priority as actual reduction to practice. *Porter* v. *Louden,* 7 App. D. C. 64; *Yates* v. *Huson,* 8 App. D. C. 93, and the cases and authorities referred to in the opinions in those cases. Appellant's counsel impliedly admit the correctness of this rule, but contend that appellee's application should not be considered constructive reduction to practice in this case, because they allege that it was not an allowable application at the time it was filed and did not become such until it was amended May 18, 1893, by inserting the claims in interference and the words " or in any suitable or known manner " in the original application, and refer to Rule 116 of the Rules of Practice of the Patent Office and the case of *Edison* v. *Ball,* 71 O. G. 1313, and other like cases construing said rule. The rule referred to is in the following language :

" In original proceedings in cases of interference the several parties will be presumed to have made the invention in the chronological order in which they claim the same in their completed applications for patents, clearly illustrating and describing the invention ; and the burden of proof will rest upon the party who shall seek to establish a different state of facts."

This rule and the cases construing it refer only to the question of the burden of proof, and have no application

whatever to the subject of a completed and allowable application. Under the statutes and Rules of Practice of the Patent Office a completed and allowable application is one which, with the specifications, drawings, and model, if any, required to be filed therewith, describes a patentable invention in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it relates to make and use the same. R. S. U. S., Sec. 4888; Patent Office Rule No. 30.

Either the specifications, drawings, models, or claims may be amended at any time, so as to make each correspond with the other; but nothing involving a departure from the original invention can be introduced by amendment. Such an amendment forms no basis for an argument that the application was not an allowable one when filed. Patent Office Rules from 68 to 78, inclusive, especially Rule 71. And these rules only state in positive terms the principles which would govern in the absence of such rules. They are the principles which apply to the amendments of pleadings and proceedings in courts. Applying them to the application of the appellee as it was when filed and when placed in interference, it is clear that none of them were violated in allowing the amendments to be made, even if that question be now open to the appellant, which may be doubted. The invention in interference was clearly set forth and described in the specifications filed with appellee's original application, and the only object of the amendment was to make the claims conform thereto, nothing new having been introduced thereby. Such an amendment is provided for by Rule 109 even after an interference has been declared. That the authorities of the Patent Office understood that no new matter was introduced by these amendments is apparent from the fact that no new or additional oath was required to the amendments when one would have been requisite by Rule 48 if anything not disclosed in the original application had been claimed. That counsel for appellant so under-

stood it may be inferred from their failure to make a motion to dissolve the interference, which might have been successfully done under Rule 122 if their present contention be correct. Their failure to make such motion is an acquiescence in the correctness of the action of the Patent Office in declaring the interference and in all preliminary steps essential thereto. *Lorraine* v. *Thurmond,* 51 O. G. 1781; *Hunter* v. *Jenkins,* 56 O. G. 1706. The application of appellee filed October 1, 1892, must be held to be an allowable one and a constructive reduction to practice and to entitle him to the award of prior invention unless at the time of his conception appellant was in the exercise of due diligence and so continued down to the date of his application. And that brings us to the consideration of the fourth question.

Fourth. Was appellant in the exercise of due diligence in completing and adapting his conception at the time appellee conceived the invention, and did such diligence continue until he made his application?

There is no general rule of what constitutes due diligence applicable to all cases. Due diligence is reasonable diligence, and that is to be determined by the particular facts of each case. *Yates* v. *Huson, supra.*

In that case the correct doctrine is stated to be that the prior inventor must " have begun and prosecuted with diligence the work of adapting and perfecting his invention before the date of his rival's conception. . . . To show that his diligence only began with that date would not be sufficient;" and that the prior negligent inventor loses " his inchoate right in favor of a subsequent and *bona fide* inventor who, having entered the unoccupied field, shall have reduced his conception to practice."

And it was also said in the case of *Porter* v. *Louden, supra,* that " a party who conceives a new device or invention and proceeds only so far as to embody it in rough sketches or drawings, or even experimental or working models, cannot

stop there, and still be able to hold the field of invention against all other inventors for an indefinite period."

Tested by these rules the appellant was not in the exercise of due dilligence at the time of appellee's conception. He had not at that time performed all the acts recited in the above quotation from *Porter* v. *Louden,* and which were held in that case to fall below the requirements of due diligence, although nearly three years had elapsed from the date of his conception, as claimed by him, and about eighteen months from the date of his disclosure as found by the Commissioner. Such inaction is clearly laches, unless excused upon some controlling ground. Especially is it so in the light of the evidence showing that appellant was less than one month constructing the mold and reducing the invention to actual practice, when he once set himself about it in September, 1892, which seems to have been his first effort to perform acts amounting to diligence, several months after appellee's conception. Nor was there any greater degree of diligence on the part of appellant after than before the conception of appellee. He made but few articles on or about the 3d day of October, 1892, and did nothing subsequently until the filing of his application December 28, 1893. Such negligence cannot prevail over the prompt action of appellee, who first reduced the invention to constructive practice by filing an allowable application in about three months after his conception and by immediately following it with actual reduction to practice by manufacturing extensively in accordance with the said process. There is a feeble attempt to explain this unreasonable delay of appellant on the alleged ground of his poverty and lack of opportunity to make or have constructed a mold ; but his answers to questions on cross-examination show that neither poverty nor lack of opportunity were controlling conditions in the way of earlier action on his part. Appellant also gave evidence tending to show that he was delayed by efforts to

make other similar inventions; but time spent upon other inventions does not excuse delay otherwise unreasonable. *Telephone Cases,* 126 U. S. 1.

Appellant, though the first to conceive, by his laches lost his inchoate right in the invention in favor of appellee, who conceived later, while appellant was lacking in due diligence, and promptly reduced his conception to practice before appellant did.

Fifth. Is appellee also entitled to the award of priority upon the second issue?

The second issue of interference is also described in appellee's application. Besides, this issue contains nothing patentable not contained in the first one. It contemplates only the making of several articles of glassware at one time by the same method or process described in the first issue. Any skilled workman in the art would readily apply the process of the first issue as suggested in the second. To pass from the first to the second would not be invention. Whoever, therefore, is the prior inventor of the first issue is of the second also. This is aptly stated in the opinion of the Examiners-in-Chief, as follows:

" Probably the matter of issue No. 2 was allowed as a follower of issue No. 1 and as containing the same process and doing no harm when following its leader in a patent. It cannot be inferred from its allowance in that connection that it had been held to be patentable by itself as containing an invention sustainable in a patent when issue No. 1 stands as a claim in another patent.

" Whoever is the inventor of issue No. 1 is the inventor of issue No. 2, whether or not he makes any mention of working his process simultaneously on more than one mass of glass."

For the reasons given we shall therefore affirm the decision] of the Commissioner of Patents and direct that a certificate of the proceedings and decision of the case in this

court be certified to the Commissioner of Patents, to be entered of record in the Patent Office, as directed by statute; and it is so ordered.

*Affirmed.*